UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIYAHNNA JOHNSON, et al.,<br>Plaintiffs,<br>v.<br>ALAMEDA COUNTY SOCIAL SERVICES AGENCY, et al.,<br>Defendants. | Case No. 26-cv-01920-TSH<br><br>**THIRD SCREENING ORDER PURSUANT TO 28 U.S.C. § 1915(e)** |

## I. INTRODUCTION

On April 10, 2026, the Court granted Plaintiffs Aiyahnna Johnson and Kaveri Traylor's applications to proceed *in forma pauperis* and screened the First Amended Complaint, finding it deficient under 28 U.S.C. § 1915(e). ECF No. 9. Plaintiffs have now filed a Second Amended Complaint. ECF No. 13. For the reasons stated below, the Court finds the Second Amended Complaint is still deficient. No later than September 14, 2026, Plaintiffs must file a third amended complaint curing the deficiencies identified in this screening order. The Court advises Plaintiffs that failure to cure these deficiencies could lead to dismissal of this case.

## II. BACKGROUND

Plaintiff Johnson resides in Oakland, California. Second Am. Compl. ¶ 2 ("SAC") (ECF No. 13). Plaintiff Traylor also resides in Oakland, California and is Johnson's adult son. *Id.* ¶ 3.

Defendants Alameda County Social Services Agency ("ACSSA") and Los Angeles County Department of Public Social Services ("LADPSS") are government agencies. *Id.* ¶¶ 4–5. Defendant Rubrik, Inc. ("Rubrik") is a corporation that "provides cloud data management services under contract to ACSSA, LADPSS, and BHC Alhambra Hospital." *Id.* ¶ 6. Defendant 35

United States District Court
Northern District of California

Ventures LLC ("35 Ventures") "is the personal investment and management company of Defendant Kevin Durant." *Id.* ¶ 7. Durant "served on Rubrik's advisory board beginning August 2017." *Id.* ¶ 15. Defendant Rich Kleiman is the co-CEO of 35 Ventures and Durant's business manager. *Id.* ¶ 9. Defendant Nate Miley is an Alameda County Supervisor who has oversight over ACSSA. *Id.* ¶ 10. Defendant East Oakland Collective "is an organization in Oakland, California that employed [Johnson] as its top-performing care coordinator from approximately 2021 to May 2025." *Id.* ¶ 12. Defendant Candace Elder is the Director of East Oakland Collective. *Id.* ¶ 11. Defendant Ieasha Larkpor is Johnson's second cousin who has "a documented business relationship" with Durant. *Id.* ¶ 13.

**A. Original Complaint And First Screening Order**

On March 5, 2026, Plaintiffs Aiyahnna Johnson and what appeared to be a second plaintiff, Lesgetit Networks LLC, filed the original complaint in this case, naming as Defendants ACSSA, LADPSS, Rubrik, 35 Ventures, Durant, and Kleiman. Compl. at 1–2 (ECF No. 1). Plaintiffs alleged federal question jurisdiction and, alternatively, diversity jurisdiction, identifying constitutional provisions including the First, Fourth, Fifth, and Fourteenth Amendments, and citing federal civil rights statutes (42 U.S.C. §§ 1983, 1985, 1986) and federal social services statutes relating to SNAP, TANF, and Medicaid. *Id.* at 6.

In the Complaint, Plaintiffs alleged that ACSSA, LADPSS, Durant, Kleiman, 35 Ventures, and Rubrik unlawfully accessed, shared, and exploited Johnson's confidential social services records and personal data without authorization, and that ACSSA and LADPSS provided her private information to Durant, 35 Ventures, and Rubrik for improper purposes including monitoring and employment blackballing. *Id.* at 8–9. Plaintiffs further alleged a civil conspiracy among all Defendants to deprive Johnson of constitutional rights by denying public assistance for improper reasons, sharing confidential data, blackballing her from employment, monitoring and harassing her, and denying equal protection and due process. *Id.*

On March 9, 2026, the Court screened the original Complaint and found several issues. ECF No. 4. First, while Johnson and Lesgetit Networks LLC were listed as the plaintiffs, no counsel appeared on behalf of Lesgetit Networks. *Id.* at 4. As a corporation may appear in federal

court only through licensed counsel, the Court directed Lesgetit Networks to file a notice of appearance through counsel, or for Johnson to file an amended complaint without Lesgetit Networks as a named plaintiff. *Id.*

As to Plaintiffs' allegations, the Court found the Complaint did not comply with Federal Rule of Civil Procedure 8 because it asserted multiple claims against multiple defendants without setting forth how each defendant was liable for each claim. *Id.* at 6. The Court directed Plaintiffs to file an amended complaint and allege: (1) the specific laws or rights they think Defendants violated; (2) for each law or right, state the specific factual allegations that connect each Defendant with the alleged wrongdoing, including the dates, the names of people involved, and what those people did to you; (3) how they were harmed; and (4) what relief they seek. *Id.*

The Court also noted Plaintiffs sought to bring constitutional claims against private actors, but they had not plausibly alleged the Defendants' conduct could be considered state action. *Id.* The Court directed Plaintiffs to file an amended complaint by April 9, 2026, warning that failure to cure these deficiencies could lead to dismissal of their case. *Id.* at 7.

**B. First Amended Complaint And Second Screening Order**

Plaintiffs Johnson and Traylor filed the First Amended Complaint ("FAC") on March 27, 2026, naming as defendants ACSSA, LADPSS, Rubrik, 35 Ventures, Durant, Kleiman, Miley, Elder, the East Oakland Collective, Larkpor, and Does 1–50. ECF No. 7.

In the FAC, Plaintiffs alleged that, from 2016 through 2025, Defendants engaged in a coordinated course of conduct that accessed and misused Johnson's confidential government records, interfered with her public benefits and employment, and precipitated the removal of her children, resulting in ongoing financial and personal harms. FAC at 1–2.

On April 10, 2026, the Court screened the First Amended Complaint and found that it did not comply with Federal Rule of Civil Procedure 8 for several reasons. ECF No. 9. First, because Plaintiffs did not specify who was bringing each claim, the Court ordered Plaintiffs to amend the FAC to state the claims brought by each Plaintiff. *Id.* at 8–9. Second, because Plaintiffs incorporated "all preceding paragraphs" for each cause of action, the Court directed Plaintiffs to amend the FAC to state the specific factual allegations that connect each Defendant with the

alleged wrongdoing for each cause of action. *Id*. at 9. Finally, the Court noted that Plaintiffs continued to assert multiple claims against multiple Defendants without setting forth how each Defendant was liable for each claim. *Id.* at 9–10. The Court again directed Plaintiffs to file an amended complaint and allege: (1) the specific laws or rights they think Defendants violated; (2) for each law or right, state the specific factual allegations that connect each Defendant with the alleged wrongdoing, including the dates, the names of people involved, and what those people did to you; (3) how they were harmed; and (4) what relief they seek. *Id.* The Court directed Plaintiffs to file an amended complaint by May 11, 2026, warning that failure to cure these deficiencies could lead to dismissal of their case. *Id.* at 1.

**C. Second Amended Complaint**

Plaintiffs Johnson and Traylor filed the operative Second Amended Complaint ("SAC") on May 7, 2026, naming the same Defendants as in the FAC. ECF No. 13.

Plaintiffs allege the following in the SAC. Between 2016 and 2025, Defendants coordinately targeted Johnson by interfering with her employment, public benefits, and custody of her children, and retaliating against her when she pursued legal complaints. SAC ¶¶ 15–36. Traylor "brings independent claims arising from his unlawful § 5150 psychiatric hold at age fourteen, the three-year wrongful custody separation (2019–2022), and ongoing PTSD." *Id.* ¶ 3.

ACSSA and LADPSS maintained Johnson's social services case data in systems managed by Rubrik, which contracted with ACSSA and failed to implement access controls for client data. *Id.* ¶¶ 15, 27. Durant, an advisory board member to Rubrik since 2017, obtained unauthorized, non-aggregated access to Johnson's individual records over multiple years without her consent. *Id.* ¶¶ 15, 17, 30. ACSSA and Rubrik breached their duty to protect Johnson's confidential data. *Id.* ¶ 33. On April 26, 2019, Johnson emailed LADPSS Director Khan Vu identifying Durant and Rubrik as the source of unauthorized access, reporting job loss tied to that access, and requesting that her file be sealed; however, no corrective action followed. *Id.* ¶¶ 15, 17, 30. LADPSS breached its duty to Johnson and Traylor to investigate complaints. *Id.* ¶ 33.

Beginning in 2018, ACSSA wrongfully interfered with or denied Johnson's CalFresh, CalWORKs, and Medi-Cal benefits without required notice or hearings, including deactivation of

her EBT card, failure to process exempt status paperwork, interception of a $2,500 state tax refund without a hearing, interception of a $5,000 federal tax refund in 2026, and a lapse in Medi-Cal coverage that led to uninsured medical debt. *Id.* ¶¶ 16, 32. Rubrik, in its capacity as a government contractor managing confidential county social services data, acted in concert with ACSSA. *Id.* ¶ 32. Johnson repeatedly complained to named ACSSA and LADPSS personnel but received no assistance or information regarding complaint procedures or rights, and an ACSSA email advising that her case sealing issue had been resolved proved inaccurate. *Id.* ¶ 17.

Several Defendants interfered with Johnson's employment. First, Defendants interfered with Johnson's newly obtained position at Sky Limo in Los Angeles and obstructed dissemination of her background check results to prospective employers, resulting in termination or loss of employment opportunities with multiple employers and a complete inability to secure new work. *Id.* ¶¶ 18–19, 28, 31. Durant, "acting through [35 Ventures]," and "with [Kleiman's] participation, caused [Johnson's] wrongful termination from Sky Limo in April 2019" by using confidential information obtained from Rubrik and interfering with Sky Limo management. *Id.* ¶¶ 18, 28. Through these actions, Durant, 35 Ventures, and Kleiman breached their duty "not to interfere with [Johnson's] lawful employment." *Id.* ¶ 33. In addition, ACSSA and LADPSS have withheld or manipulated her background check since 2017, yielding a 100% termination rate across identified employers. *Id.* ¶¶ 19, 29, 31. Second, Defendants interfered with Johnson's later employment at East Oakland Collective where Johnson worked as a top-performing care coordinator from approximately 2022 until May 2025. *Id.* ¶ 23. In 2025, Johnson was terminated by Director Elder, in coordination with ACSSA's interception of a $2,500 tax refund, political coordination by County Supervisor Miley, and a contemporaneous social media post by Durant. *Id.* ¶¶ 23, 28, 30–31. Miley used his oversight to obstruct a CARB grant connected to Johnson's work on the AB617 board, resulting in lost funding and business impacts. *Id.* ¶¶ 24, 28, 31.

Some Defendants committed unconstitutional child welfare interventions in 2019. *Id.* ¶¶ 20–22, 30–33. ACSSA and LADPSS located Johnson's family at a therapy appointment on May 28, 2019, removed Traylor and placed him on a six-day § 5150 hold without an abuse finding, and then removed both of Johnson's children on June 17, 2019. *Id.* ¶¶ 20, 30, 32. A DCFS social

United States District Court
Northern District of California

worker later closed the investigation as "inconclusive" on July 5, 2019 (confirmed by a July 10, 2019, letter). *Id.* ¶¶ 21, 30, 32. Subpoenas for medical records continued thereafter, including to BHC Alhambra Hospital. *Id.* ¶¶ 21, 33. Reunification occurred in approximately 2022 by court order, after the removal of the presiding judge and replacement of a caseworker, but Traylor continues to suffer PTSD arising from the childhood psychiatric hold and subsequent separation. *Id.* ¶¶ 22, 30, 32.

From 2016 through 2025, Durant, 35 Ventures, and Kleiman obtained Johnson's professional sports consulting services "through coercion" by using Rubrik access to destroy her employment, monitor and control her movements, and isolate her from family support by corrupting Larkpor. *Id.* ¶ 34.

Larkpor, who is Johnson's second cousin, maintained a financial relationship with Durant while providing him family intelligence about Johnson. *Id.* ¶ 30. Larkpor maintained a seventeen-year business relationship with Durant that generated hundreds of thousands of dollars in real estate commissions. *Id.* ¶ 31.

Several Defendants stalked Johnson and Traylor and retaliated against them for pursuing legal complaints. *Id.* ¶¶ 25, 35. ACSSA and LADPSS monitored Johnson's personal information through Rubrik, intercepted Johnson's tax return, and used Johnson's children as leverage to monitor and control her. *Id.* ¶ 35. Durant obtained Johnson's confidential information from Rubrik and used that to track her. *Id.* Elder had access to Plaintiffs' residential address and provided it to other Defendants who orchestrated theft of Johnson's vehicle, tampering of her mailbox, and facilitation of a Facebook post that solicited harm to Johnson. *Id.* ¶¶ 25, 34.

ACSSA and Miley, in his capacity as a Supervisor, denied Johnson meaningful access to courts when they monopolized local civil rights counsel through government contracts, destroyed Johnson's income so she could not afford counsel, and required Johnson to litigate *pro se* while facing coordinated government defendants. *Id.* ¶ 36.

As a result of Defendants' conduct, Plaintiffs face an ongoing financial emergency linked to the background check withholding and benefits manipulation. *Id.* ¶ 26. Specifically, Plaintiffs face eviction, documented unpaid obligations totaling $27,744, lapsed insurance, and an

employment blackout tied to the withholding of Johnson's background check results. *Id.* at 13.

Plaintiffs bring ten causes of action: (1) Breach of Confidentiality and Data Privacy Violations (by Johnson against ACSSA, LADPSS, and Rubrik); (2) Wrongful Termination (by Johnson against 35 Ventures, Durant, Kleiman, Miley, Elder, and the East Oakland Collective): (3) Intentional Interference with Prospective Economic Advantage (by Johnson against ACSSA, LADPSS, 35 Ventures, Durant, Kleiman, Miley, and Elder); (4) Intentional Infliction of Emotional Distress (by Johnson and Traylor against all Defendants except Rubrik); (5) Civil Conspiracy (by Johnson and Traylor against all Defendants); (6) Deprivation of Civil Rights under 42 U.S.C. § 1983 (by Johnson and Traylor against ACSSA, LADPSS, and Rubrik); (7) Negligence (by Johnson and Traylor against all Defendants); (8) Human Trafficking (Cal. Civ. Code § 52.5) (by Johnson against 35 Ventures, Durant, and Kleiman); (9) Stalking (Cal. Civ. Code § 1708.7) (by Johnson and Traylor against all Defendants); and (10) Denial of Access to Courts under 42 U.S.C. § 1983 (by Johnson against ACSSA and Miley). *Id.* ¶¶ 27–36. Plaintiffs seek "emergency injunctive relief," compensatory damages, punitive damages in the amount of $50,000,000, and statutory treble damages. *Id.* at 13.

## III. SUA SPONTE SCREENING UNDER 28 U.S.C. § 1915(e)(2)

### A. Legal Standard

A court must dismiss an *in forma pauperis* complaint before service of process if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(i) – (iii). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). As such, the complaint must allege facts that plausibly establish each defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the Court must "take as true all

United States District Court
Northern District of California

allegations of material fact stated in the complaint and construe them in the light most favorable to the plaintiff." *Watison*, 668 F.3d at 1112 (citation omitted). The Court must also "construe a *pro se* plaintiff's pleadings liberally and afford the petitioner the benefit of any doubt." *Id.* (cleaned up). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (cleaned up).

A complaint must also comply with Federal Rule of Civil Procedure 8, which requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The failure to comply with Rule 8 is a basis for dismissal that is not dependent on whether the complaint is without merit. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Accordingly, even claims which are not on their face subject to dismissal under Rule 12(b)(6) may still be dismissed for violating Rule 8(a). *Id.*

**B. Application**

**1. Frivolousness**

"'A complaint . . . is frivolous where it lacks an arguable basis either in law or in fact.'" *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The definition of frivolousness "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "the unusual power to pierce the veil of the complaint's factual allegations," meaning it "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32 (cleaned up). Frivolous claims include "claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* (cleaned up). "An *in forma pauperis* complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely." *Id.* at 33. But "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* As the Ninth Circuit has explained, frivolous litigation "is not limited to cases in which a legal claim is entirely without merit . . . . [A] person with a measured legitimate

claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th Cir. 2007).

Here, the Court finds some of Plaintiffs' claims are frivolous. Plaintiffs allege that Durant, 35 Ventures, and Kleiman stalked them, conspired to harm them, secretly obtained access to Johnson's confidential records, continuously interfered with Johnson's employment over a seven-year period, and coerced Johnson to provide consulting services. FAC ¶¶ 15, 17–18, 23, 25, 28, 30, 34–35. While it is possible Plaintiffs have an honest belief in their allegations, their "allegations fall further out on the spectrum past implausible and toward the delusional." *Spitters v. Miceli*, No. 18-cv-04917-LB, 2018 WL 6816110, at *5 (N.D. Cal. Sept. 24, 2018), *report and recommendation adopted*, 2018 WL 6822626 (N.D. Cal. Oct. 15, 2018). The idea that a world-famous professional basketball player, his investment vehicle, and his business manager are targeting Plaintiffs is delusional, and the Court finds that the allegations against Durant, 35 Ventures, and Kleiman are frivolous. *Cf. id.* (dismissing as frivolous complaint where plaintiff alleged, among other things that defendant was a super-spy and an assassin who was using a fabricated identity to "get at" him); *Seelig v. Cent. Intel. Agency*, No. 25-cv-06592-TSH, 2025 WL 2237672, at *3 (N.D. Cal. Aug. 6, 2025), *report and recommendation adopted*, 2025 WL 2418520 (N.D. Cal. Aug. 21, 2025) (dismissing complaint where complaint alleged that several government actors were conspiring to surveil and harass plaintiff); *Lindblad v. Presidio Tr. Bd.*, No. 21-cv-06806-EMC, 2021 WL 5048349, at *1 (N.D. Cal. Sept. 27, 2021) (dismissing case in which plaintiff alleged he was "the rightful owner of San Francisco," finding "[t]he Court does not doubt Mr. Lindblad's contention that the allegations contained in his complaint are 'honest' statements of his views, but the Court finds these allegations fall on the spectrum past implausible and, therefore, that they are frivolous.") (cleaned up).

**2. Rule 8**

To comply with Rule 8, a complaint need not provide detailed factual allegations, but it is "a plaintiff's obligation to provide the grounds of his entitlement to relief." *Twombly*, 550 U.S. at 555 (cleaned up). A plaintiff must do more than assert "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, the plaintiff must provide

sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

Here, because Plaintiffs are self-represented, the Court must construe the pleadings liberally and afford them the benefit of the doubt. *Watison*, 668 F.3d at 1112. However, Plaintiffs' *pro se* status does not relieve Plaintiffs of conformity to the pleading rules. *See, e.g.*, *Romano v. U.S. Army Core of Eng'rs*, No. 3:17-cv-00930-JD, 2017 WL 6448221, at *1 (N.D. Cal. Dec. 18, 2017).

Plaintiffs have cured some of the deficiencies identified in the Court's Second Screening Order (ECF No. 9). The SAC specifies which Plaintiff brings each claim and the basis for the claim. The SAC also includes specific allegations for each cause of action. However, Plaintiffs continue to assert multiple claims against multiple Defendants, but they do not set forth a short and plain statement showing how *each* Defendant is liable for each claim. Blanket allegations that some defendants assisted the others to perform alleged violations are not sufficiently specific to place the defendants on notice of the allegations against them. A plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up).

As currently pled, some Defendants would not know where to begin in responding to some of Plaintiffs' claims. Specifically, two of Plaintiffs' claims remain deficient. First, Claims 4 and 9 list Miley as a Defendant but do not mention him in the allegations following these claims. SAC ¶¶ 30, 35. Plaintiffs must explain *how* Miley is liable for these claims. Similarly, because Plaintiffs list Larkpor as a Defendant in Claim 9, Plaintiffs must explain how Larkpor is liable for this claim. *Id.* ¶ 35. Again, Plaintiffs must allege facts specific to each Defendant.

Second, Claim 9 lists East Oakland Collective as a Defendant. *Id.* However, while Claim 9 lists Elder as a Defendant, Plaintiffs do not explain how Elder was acting on behalf of East Oakland Collective for this claim. *Id.* Plaintiffs must explain how East Oakland Collective is liable for this claim.

Therefore, to comply with Rule 8's pleading requirement, Plaintiffs must amend the complaint to allege: (1) the specific laws or rights that you think the Defendant(s) violated; (2) for each law or right, state the specific factual allegations that connect each Defendant with the

alleged wrongdoing, including the dates, the names of people involved, and what those people did to you; (3) how you were harmed; and (4) what relief you seek. Plaintiffs are advised that it is not enough to state they "incorporate all preceding paragraphs" at the start of each cause of action. Alternatively, Plaintiffs may amend their complaint to remove claims against some Defendants.

## IV. CONCLUSION

For the reasons above, the Court screens Plaintiffs' amended complaint pursuant to 28 U.S.C. § 1915(e). However, given the *pro se* status of Plaintiffs, and because it is not clear that the deficiencies of the complaint could not be cured by amendment, the Court shall grant another opportunity to amend. Accordingly, the Court **ORDERS** Plaintiffs to file a third amended complaint by September 14, 2026.

### A. Requirements for Amended Complaint

The Court advises Plaintiffs that an amended complaint replaces a prior complaint, meaning the prior complaint is treated as non-existent. *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (internal quotations and citation omitted). Thus, nothing from the prior complaint shall be considered or deemed part of the pleadings in this action. Instead, any amendment must include all of the facts and claims to be presented and all of the defendants that are to be sued. In addition, any amended complaint must include the following sections:

> **Caption Page**
> On the first page, list the names of the defendant(s), the case number used in this order (26-cv-01920-TSH), the title ("THIRD AMENDED COMPLAINT"), and write "Demand for Jury Trial" if you want your case to be heard by a jury.
>
> **Form of Pleadings**
> The factual allegations and claims must be written in numbered paragraphs, each limited as far as practicable to a single set of circumstances.
>
> **Subject Matter Jurisdiction**
> The first numbered paragraph in your complaint (labeled "Jurisdiction") should explain why this Court has the power to decide this kind of case. A federal court can hear a case based on a federal question jurisdiction (a violation of federal law under 28 U.S.C. § 1331) or diversity jurisdiction (when all plaintiffs and all defendants

United States District Court
Northern District of California

are citizens of different states disputing more than $75,000) under 28 U.S.C. § 1332.

**Parties**
In separate paragraphs for each party, identify the plaintiff(s) and defendant(s) in the case.

**Statement of Facts**
Explain the important facts in numbered paragraphs, describing how the defendant(s) violated the law and how you have been injured.

**Claims**
Include a separate heading for each legal claim (Claim 1, Claim 2, etc.), identifying the specific law that you think the defendant(s) violated and explaining in numbered paragraphs what each defendant did to violate each law.

**B. Assistance for Self-Represented Litigants**

The Court encourages Plaintiffs to seek assistance from the Federal Pro Bono Project, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco. You may request an appointment by emailing fedpro@sfbar.org or calling 415-782-8982. At the Federal Pro Bono Project, you will be able to speak with an attorney who may be able to provide basic legal help but not representation. More information is available at https://www.cand.uscourts.gov/pro-se-litigants/.

Plaintiffs may also wish to obtain a copy of this District's *Handbook for Litigants Without a Lawyer*, which provides instructions on how to proceed at every stage of your case. The handbook is available in person at the Clerk's Office and online at: https://www.cand.uscourts.gov/pro-se-litigants/.

**IT IS SO ORDERED.**

Dated: August 24, 2026

THOMAS S. HIXSON
United States Magistrate Judge